IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

MICHELLE DILLAHA                                                   PLAINTIFF

v.                                                          CAUSE NO. 1:18cv301-LG-RHW

PASCAGOULA GAUTIER SCHOOL
DISTRICT                                                       DEFENDANT

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the [24] Motion for Summary Judgment filed by Defendant Pascagoula Gautier School District ("the School District"). In the Motion, the School District argues that it is entitled to summary judgment because Plaintiff Michelle Dillaha has failed to meet her burden of production to substantiate claims for employment discrimination under the Americans With Disabilities Act ("ADA") and retaliation for utilizing the Family Medical Leave Act ("FMLA"). The Motion also contends that punitive damages are unavailable for Plaintiff on her claims against the School District. Plaintiff filed a response, but the School District did not file a reply, and the time for doing so has passed. Having considered the submissions of the parties, the record, and relevant law, the Court concludes that the School District's Motion for Summary Judgment should be granted in part and denied in part. It will be granted insofar as Plaintiff concedes that she is not entitled to punitive damages and otherwise will be denied.

# I. BACKGROUND

The undisputed record establishes the following operative facts.[1] In August 2014, the School District hired Dillaha to be a teacher. She was diagnosed with anxiety and depression in 2015. In September 2017, her mental illness became so severe that she could not control its effects. On October 12, 2017, she was informed by Beth Goff, the principal of her school, that she had to take FMLA leave and be evaluated by a psychologist within two weeks. She was seen by Dr. Ruth Shoemaker on October 25, 2017, who diagnosed her with major depressive disorder, schizoid personality disorder, avoidant personality disorder, and generalized anxiety disorder.

Based on Dr. Shoemaker's diagnoses and recommendations, Nurse Practitioner Ashley Hilsabeck – Dillaha's primary care provider – completed an FMLA form certifying that Dillaha's serious health condition prevented her from returning to work. The FMLA form, which was submitted to the School District, explained that Dillaha required an initial undetermined period of leave and, upon returning to work, required intermittent leave in order to accommodate flare ups of depression and anxiety.

Once Dr. Shoemaker confirmed to Goff that Dillaha was no longer a threat to herself or others, Dillaha returned to work on November 13, 2017. Dillaha

---

[1] The facts are taken from Plaintiff's [27-1] Declaration; a [27-2] Psychological Evaluation of Plaintiff completed by a psychiatrist, Dr. Shoemaker; a [27-3] FMLA form completed by Plaintiff's primary care provider, Ashley Hilsabeck; and a [27-4] letter from Dr. Shoemaker to Principal Beth Goff confirming that Plaintiff could return to work. The School District submitted no evidence in support of its Motion for Summary Judgment.

completed the fall 2017 school semester, but informed Goff that she would need to take a week of FMLA leave in January 2018 to address her mental health. On December 22, 2018, Goff called Dillaha to her office and told Dillaha that she should resign and could not use FMLA leave. Dillaha refused to resign.

She returned to work on January 3, 2018 and asked to meet with Goff. Dillaha states that wanted to meet with Goff to explain the effects of her mental conditions and to ask for an accommodation in the form of an extension of time to turn in her lesson plans. Goff set a meeting for the next day, January 4, 2018. At the meeting, Dillaha began discussing her psychological evaluation and was cut off by Goff, who stated, "That has nothing to do with me." (Dillaha Decl. 2, ECF No. 27-1. Goff handed Dillaha a Teacher Improvement Plan and told her to complete it by January 12, 2018. Dillaha was placed on administrative paid leave the same day by the School District's Assistant Superintendent, Belinda Dammen.

On January 8, 2018, Dillaha called and emailed Goff to ask how long her administrative leave would last and to ask a question regarding her Teacher Improvement Plan. Goff returned her call and asked Dillaha to attend a meeting that afternoon with the Superintendent, Wayne Rodolfich. At the meeting, Goff told Dillaha that she intended to terminate Dillaha for unprofessional conduct.

Dillaha requested a hearing before the School Board, which affirmed Goff's decision to terminate Dillaha. Dillaha's termination became final on March 12, 2018. She received her Notice of Right to Sue from the Equal Employment

Opportunity Commission ("EEOC") on June 28, 2018, and, on September 17, 2018, filed the instant lawsuit.

## II. DISCUSSION

a. <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

"A genuine dispute of material fact means that 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the evidence presented by the nonmovant "'is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 249). In deciding whether summary judgment is appropriate, the Court views the evidence and

– 4 –

inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

    b. <u>Plaintiff Has Demonstrated That She is Disabled Under the ADA</u>

The parties do not address whether this is a direct evidence case or a circumstantial evidence case, but, in the Court's opinion, the evidence in the record requires the fact finder to infer discriminatory animus. This makes the evidence circumstantial, which means that Dillaha's discrimination claim is evaluated under the classic *McDonnell Douglas* framework. *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 341 (5th Cir. 2019).

Dillaha must accordingly "make out a *prima facie* case of discrimination by showing that: (1) [s]he has a disability or was regarded as disabled; (2) [s]he was qualified for the job; and (3) [s]he was subject to an adverse employment decision because of [her] disability." *Id.*; *see also Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2011). If she does, the burden shifts to the School District to articulate a legitimate non-discriminatory reason for the adverse employment action. *Nall*, 917 F.3d at 341. If the School District meets that burden, Dillaha must come forward with evidence from which a jury could conclude that the School District's articulated reason is pretextual. *Id.* at 342. The School District only argues that Dillaha has failed to establish a *prima facie* claim of discrimination because she has not submitted evidence substantiating that she was disabled at the time of her termination.

Relevant to this case, a disability is "'[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual[.]'" *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 222 (5th Cir. 2011) (alteration in original) (quoting 29 C.F.R. § 1630.2(g)); 42 U.S.C. § 12102(1)(A). "[T]he ADA requires a case-by-case determination of the employee's impairment." *Id.*; *see* 29 C.F.R. § 1630.2(j)(1)(iv). "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D). "The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as . . . medication . . . or . . . learned behavioral or adaptive neurological modifications." *Id.* § 12102(4)(E)(I)-(IV).

"[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). "[A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id.* § 12102(2)(B).

The record clearly establishes that Dillaha has met her evidentiary burden of establishing that she is disabled under the ADA. Dillaha states in her declaration that she has been diagnosed with major depressive disorder, schizoid personality

disorder, avoidant personality disorder, and generalized anxiety disorder. (Dillaha Decl. 1, ECF No. 27-1; *see also* Psychological Evaluation 2, ECF No. 27-2.) She explains how these conditions affect her ability to perform major life activities:

> My mental disabilities make it very difficult to concentrate, cause me to be fatigued regularly, and make to where I cannot engage in any action when I have a flare-up. I also become very irritable when I have a flare-up and can lose control of emotions. In past flare-ups I have had thoughts of suicide and have had to get people to come help me because I was unable to do anything.

(Dillaha Decl. 3, ECF No. 27-1.) Her primary care practitioner confirmed in a FMLA certification form that it is medically necessary for Dillaha to be absent from work when her conditions flare up, because, in those circumstances, Dillaha is unable to effectively fulfill her duties as a teacher. (Serious Health Condition Cert. 1-3, ECF No. 27-3.)

The EEOC's regulations interpreting the ADA explicitly state that, applying the rules of construction, "it should easily be concluded that . . . major depressive disorder . . . and schizophrenia substantially limit brain function." 29 C.F.R. § 1630.2(j)(3)(iii). Dillaha has submitted evidence that she suffers from major depressive disorder and schizoid personality disorder. She also has explained how and to what extent these conditions, when flared up, limit her brain function. She need not do more to survive summary judgment. *See Feldman v. Law Enforcement Assocs. Corp.,* No. 5: 10–cv–08–BR, 779 F. Supp. 2d 472 (E.D.N.C. March 10, 2011) (holding that employee who suffered from episodic flare ups of multiple sclerosis

("MS") had plausible claim of disability under the ADA as amended because when active, the MS substantially limited the employee's normal neurological functions); *Hoffman v. Carefirst of Fort Wayne, Inc.*, 737 F. Supp. 2d 976, 984-86 (N.D. Ind. 2010) (holding that an employee who suffered from renal cancer, which was in remission at the time, was disabled under the ADA because when active, the renal cancer substantially limited the major life activity of normal cell growth).

    c. <u>Plaintiff States a Claim for Relief Under the FMLA and Defendant Makes No Substantive Argument to the Contrary</u>

The School District makes no argument in support of the assertion that Plaintiff has failed to submit adequate evidence supporting a claim for relief under the FMLA. This request can be denied for this reason alone because the School District has not met its own Rule 56 burden to show "that there is no genuine dispute as to any material fact" and that the School District "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, the Court would note that Dillaha's FMLA retaliation claim survives summary judgment on the merits.

Under the FMLA, employees may take up to twelve weeks of time off in a twelve-month period for medical reasons, 29 U.S.C. § 2612(a), and it is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" this right to take approved leave. *Id.* § 2615(a)(1). "Thus, employers have a prescriptive obligation under the FMLA – they must grant employees substantive rights guaranteed by the FMLA – and they have a proscriptive obligation – they may not penalize employees for exercising these rights." *Chaffin v. John H. Carter Co., Inc.,* 179 F.3d 316, 319 (5th Cir. 1999), *partially abrogated on other grounds by*

– 8 –

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-49 (2000). Dillaha's claim implicates the proscriptive FMLA rights, which include an employee's right not to be discriminated or retaliated against for having exercised the right to take FMLA leave. *Haley v. Alliance Compressor LLC,* 391 F.3d 644, 649 (5th Cir. 2004); *see also* 29 C.F.R. § 825.220(c) ("The Act[] . . . prohibits an employer from discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights.").

"To make a *prima facie* case of retaliatory discharge, the employee must show that (1) she engaged in a protected activity, (2) the employer discharged her, and (3) there is a causal link between the protected activity and the discharge." *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005). "When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the 'temporal proximity' between the FMLA leave and the termination." *Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006).

The record demonstrates that Dillaha engaged in protected activity by taking FMLA leave for almost three weeks beginning October 25, 2017 and, in December 2017, seeking an additional week of FMLA leave in January 2018. Further, the record shows Dillaha was discharged (in addition to suffering other adverse employment actions): Principal Goff told Dillaha to resign instead of taking that week of leave in January, and, when Dillaha refused to resign, she was placed on administrative leave the same day. She was informed of Goff's intent to terminate

her on January 8, 2018, and finally terminated March 12, 2018. The incredibly short period of time between Dillaha's request to take FMLA leave on December 22, 2018 and Goff's decision to terminate her on January 8, 2018 is sufficient to establish a causal link between her protected activity and her termination. *See Grubb v. Sw. Airlines*, 296 F. App'x 383, 390 (5th Cir. 2008) (finding a period of 12 days between requesting leave and termination is sufficient to establish a causal link between protected activity and discharge); *Goff v. Singing River Health Sys.*, 6 F. Supp. 704, 709 (S.D. Miss. 2014) (finding a period of nine days between requesting leave and termination establishes a causal link).

The School District offers no legitimate, non-discriminatory reason for terminating Dillaha.[2] *See Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006) (explaining that the well-established *McDonnell Douglas* burden-shifting framework applies to FMLA discrimination and retaliation claims). Accordingly, the School District has failed to demonstrate that it is entitled to summary judgment on Dillaha's FMLA retaliation claim.

    d. <u>Plaintiff Concedes that Punitive Damages are Unavailable Against the School Board Because it is a Political Subdivision</u>

The School District argues that Plaintiff may not recover punitive damages against it under the ADA or the FMLA because it is a political subdivision of the government. Dillaha concedes that her request for punitive damages should be dismissed. *See Liner v. Hosp. Serv. Dist. No. 1 of Jefferson Par.*, 230 F. App'x 361,

---

[2] Dillaha has not met their burden for them by stating that Principal Goff informed her she would be terminated for unprofessional conduct. Not only does the School District make no mention of any reason for Dillaha's termination, but there is no explanation of what "unprofessional conduct" Dillaha engaged in.

365 (5th Cir. 2007) (noting that punitive damages are not available under the ADA by virtue of 42 U.S.C. § 1981a(b)(1)); 29 U.S.C. § 2617(a)(1)(A) (providing for compensatory damages or, in cases of bad faith violations, double damages under the FMLA).

III. CONCLUSION

For the foregoing reasons, Plaintiff's claims under the ADA and FMLA survive summary judgment. However, Plaintiff's request for punitive damages is dismissed. Defendant's Motion for Summary Judgment will accordingly be granted in part and denied in part.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [24] Motion for Summary Judgment filed by Defendant Pascagoula Gautier School District is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's request for punitive damages is **DISMISSED**. Defendant's Motion for Summary Judgment is otherwise **DENIED**.

**SO ORDERED AND ADJUDGED** this the 30th day of October, 2019.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE